## IN THE UNITED STATES DISTRICT COURT FOR THE
## WESTERN DISTRICT OF OKLAHOMA

| | | |
|---|---|---|
| **(1) HECTOR ALEJANDRO VILLASANA** | ) | |
| **CASTILLO**, and | ) | |
| **(2) H & R ENTERPRISES, LLC**, an | ) | |
| Oklahoma Limited Liability Company, | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| vs. | ) | Case No. _CIV-14-1006-M_ |
| | ) | |
| **(1) ROBERT S. DURAN, JR.**, | ) | |
| **(2) STUART, CLOVER, DURAN, THOMAS** | ) | |
| **& VORNDRAN, LLP**, an Oklahoma | ) | |
| Limited Liability Partnership, and | ) | |
| **(3) STUART & CLOVER, PLLC**, an | ) | |
| Oklahoma Professional Limited Liability | ) | **ATTORNEY LIEN CLAIMED** |
| Corporation, | ) | |
| | ) | **JURY TRIAL DEMANDED** |
| Defendants, | ) | |

## ORIGINAL COMPLAINT

**COME NOW** the Plaintiffs, Hector Alejandro Villasana Castillo and H & R Enterprises, LLC, and for their Complaint against the Defendants Robert S. Duran, Jr., Stuart, Clover, Duran, Thomas & Vorndran, LLP, and Stuart & Clover, PLLC, hereby allege and state as follows:

### I.  PARTIES

1.     Plaintiff Hector Alejandro Villasana Castillo ("Villasana") is a citizen and resident of the country of Mexico, but at all times relevant hereto, owned property, both real and personal, in the State of Oklahoma, and has at all times relevant hereto served as the sole member/owner of H & R Enterprises, LLC.

2.      Plaintiff H & R Enterprises, LLC ("H & R"), is an Oklahoma Limited Liability Company, in good standing with the Secretary of State of Oklahoma.  Villasana is now and was at all times relevant hereto the only member/owner of H & R.

3.      Defendant Robert S. Duran, Jr. ("Duran") is an attorney, currently under suspension by the Oklahoma Bar Association, who resides in the City of Shawnee, Pottawatomie County, State of Oklahoma and although not currently, was at all times relevant hereto, a partner at the Stuart, Clover, Duran, Thomas & Vorndran, LLP law firm.

4.      Defendant Stuart, Clover, Duran, Thomas & Vorndran, LLP, was at all times relevant hereto, a law firm and an Oklahoma Limited Liability Partnership with its principle offices located in the City of Shawnee, Pottawatomie County, State of Oklahoma.

5.      Defendant Stuart & Clover, PLLC (referred to herein collectively with Defendant Stuart, Clover, Duran, Thomas & Vorndran, LLP as "Stuart & Clover"), is a law firm that is an Oklahoma Professional Limited Liability Corporation, the successor in interest of, and formerly known as - Stuart, Clover, Duran, Thomas & Vorndran, LLP; and has its principle offices located in those of its predecessor named law firm in the City of Shawnee, Pottawatomie County, State of Oklahoma.

## II. JURISDICTION AND VENUE

6.      The United States Federal Court of the Western District of Oklahoma has original jurisdiction of this action pursuant to 28 U.S.C. § 1332(a)(2) since the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and is between citizens of the State of Oklahoma and a citizen of a foreign country (Mexico).

7.      Venue is proper in the Western District of Oklahoma pursuant to 28 U.S.C. § 1391(b) as all defendants are residents therein.

### III. STATEMENT OF FACTS RELEVANT TO ALL CLAIMS

8.      On or about June 19, 2009, Plaintiff Villasana, as the sole member, manager, owner, became involved in an arbitration matter involving his business (H & R) and a company in Texas called Landmark Structures I, LP ("Landmark") related to some industrial painting and sealing work Plaintiff claimed he had not been paid for in the amount of about $950,000.00.

9.      Plaintiffs hired Defendants Duran and Stuart & Clover to represent them in the arbitration matter before the American Arbitration Association in Dallas, Texas; Case No. 71 110 00546 11.

10.      Plaintiffs allege in good faith that the attorney/client agreement with Defendants Duran and Stuart & Clover was oral, but if written, would show Villasana as the client and/or the authorized agent/representative of H & R.  However, Plaintiffs cannot verify this since Duran repeatedly refused numerous requests by Villasana and his new attorney to produce copies of any of Plaintiffs' files.

11.      On May 19, 2010, during the pendency of the said arbitration, Villasana was picked up outside his home and H & R's company office in Sapulpa, Oklahoma (Creek County) purportedly by Immigration and Customs Enforcement officers and allegedly deported back to Mexico without a hearing on May 21, 2010.

12.     Following his deportation, Villasana put Kimberly Joyce ("Joyce"), who was his wife at the time, in charge of daily H & R business operations in the U.S. while he continued to manage field operations and project bids from Mexico.

13.     However, at no time did Villasana ever sell, transfer, assign, or otherwise give Joyce any amount of ownership, share, or membership in H & R.

14.     On May 18, 2010, the day before Villasana was picked up, Defendant Duran prepared a "Durable Power of Attorney and Designation of Guardian" ("POA"), purportedly making Joyce his guardian and attorney-in-fact.

15.     The POA was prepared without Villasana's knowledge, direction, or permission.

16.     Despite being witnessed by two (2) attorneys in Stuart & Clover's law office, Mathew L. Thomas and Duran himself, the POA contains a forged signature thereon that purports to be Villasana's, but he could not have signed the POA since he was half way across the State of Oklahoma on a job site at that same time.

17.     After consultation with a certified handwriting expert, Plaintiffs believe in good faith that Defendant Duran forged Plaintiff Villasana's signature on the POA.

18.     Joyce signed the Acceptance clause of the POA, and it was notarized by Tina L. Sims, a Notary Public at Stuart & Clover's law firm.

19.     Certainly, Mr. Thomas, Mr. Duran, and Ms. Sims, all from Stuart & Clover, were aware that Villasana was not actually present, it was not his signature on the POA, and that the document therefore was a forgery.  Plaintiffs however, only came to full knowledge of the facts surrounding the creation, forgery and use of the POA in early 2013.

4

20.     On the same day Villasana was allegedly deported (May 21, 2010) and without his knowledge, permission or approval, Duran prepared and Joyce allegedly signed, an Application to Reinstate H & R with the Oklahoma Secretary of State ("OSOS"), naming himself the registered service agent and Joyce a Manager of H & R.

21.     After consultation with a certified handwriting expert, Plaintiffs believe in good faith that Defendant Duran forged Joyce's signature on the OSOS documents.

22.     In July 2012, Duran filed another Application to Reinstate H & R with the OSOS, after apparently allowing it to be terminated in 2011, this time in addition to naming himself the registered service agent, he also appointed himself as Manager of H & R, again without Villasana's knowledge, permission or approval.

23.     Additionally, on April 27, 2011, with Villasana in Mexico, H & R entered into a partial settlement agreement with Landmark, negotiated by Duran and signed by Joyce (on behalf of the company) in the amount of about $635,000.00.  Landmark paid the same to Stuart & Clover on behalf of H & R.  However, there still remained a dispute in arbitration over about $300,000.00 in charges by H & R and offset claims by Landmark.

24.     Of the $635,000.00 settlement Landmark paid Stuart & Clover on Plaintiffs' claims, approximately One Hundred, Sixty Thousand Dollars ($160,000.00) is still unaccounted for.

25.     Upon information obtained from Plaintiffs' banking institution, without Plaintiffs' knowledge, direction, or permission, Joyce used the forged POA to withdraw funds from the H & R business accounts, from which Plaintiffs believe she open new

accounts, to which she transferred, embezzled and concealed some or all of the still unaccounted funds from the partial Landmark settlement as well as other H & R income.

26.     On November 14, 2012, the Arbitrator entered an Award in favor of H & R for the sum of Sixty-Six Thousand, Seven Hundred, Fifty-three Dollars and seventeen cents ($66,753.17), on the remaining and unsettled claims.  However, to date, Plaintiffs have never received any this money.

27.     Despite Villasana's numerous telephone messages, calls and emails to Defendant Duran, many of which were never returned, inquiring of the status of his arbitration case, well past November 14, 2012, and into early 2013; Duran failed to advise Plaintiff of the conclusion of the arbitration, that there had been a final order entered in his favor or that additional money was owed him by Landmark.

28.     To the contrary, Duran deceived and misrepresented to Plaintiffs that the arbitration was *not* fully concluded, that there was no final order entered and that no determination of how much money was owed him had been made; only for Plaintiff to discover otherwise in about April 2013.

29.     Since Villasana was in Mexico and unable to return to the U.S., Joyce was entrusted to handle H & R's daily operations in the U.S. and thus worked closely with Villasana and Duran on behalf of H & R during the pendency of the arbitration; from about May 19, 2010 until about November 14, 2012.

30.     However, on February 23, 2012, seven (7) months *before* the final arbitration award of November 14, 2012, despite having near daily contact with Villasana, Joyce obtained a default Decree of Dissolution of Marriage from him by fraudulently telling the

Stephens County Oklahoma District Court (in Case No. FD-2011-312) that she did not know her husband's whereabouts.  Villasana did not know Joyce had filed for or obtained a divorce from him until about March of 2013.

31.     The attorney Joyce hired to help her obtain the fraudulent default divorce decree, is a personal friend of Duran's and it is Plaintiffs' understanding that Duran referred Joyce to this attorney for the purposes of obtaining said divorce.

32.     Further, because of Duran's referral and since Joyce remained in close contact with Duran during the pendency of the arbitration, which lasted longer than her divorce proceedings; Plaintiffs' have a good faith belief that Duran was aware Joyce had divorced Villasana, but he intentionally kept that information hidden from Villasana.

33.     Duran's failure to advise Villasana that Joyce had divorce him assisted and allowed Joyce to stay close enough to Plaintiffs to maintain access to their finances, property and other assets until the arbitration was finalized.

34.     In the months following her divorce from Villasana, continuing until the end of 2012 or early 2013, Joyce availed herself of the forged POA prepared by Duran to assist her in transferring away all of Villasana and H & R's finances, property and other assets, including Villasana's Sapulpa, Oklahoma residence, which was also from where he operated H & R's business.

35.     The total combined value of loss to H & R and Villasana is approximately Eight Hundred, Sixty Thousand Dollars ($860,000.00), and Plaintiffs believe Joyce may have shared money she made from the sale of Villasana's real property and/or H & R's equipment, with Duran for his participation in the conversion, fraud and cover up.

36.     In October 2012, without being aware that she had divorced him, Villasana requested certain H & R financial documents from Joyce, which she refused to produce.

37.     On or about November 20, 2012, Villasana discovered the forged POA while speaking to his bank about irregular transactions and money missing from his account, but he did not know at that time that the POA had been prepared by Duran.

38.     As a result of his discovery of the forged POA from his bank, Villasana asked Duran, his trusted lawyer, to help him revoke or rescind the POA and to attempt to determine the extent of the financial damage done by Joyce.

39.     Also on or about November 20, 2012, Plaintiff asked Duran to investigate and intervene with Joyce in regard to the H & R financial documents.

40.     On or about December 17, 2012, Duran prepared a Replevin Petition to file against Joyce on behalf of Villasana and H & R in order to recover the H & R financial documents.  At that same time, Duran advised Villasana that he was going to obtain a court order for the sheriff to recover said documents from Joyce.

41.     However, despite Duran's promises, the Replevin Petition was never filed, nor did Duran ever obtain or attempt to obtain such an order or assistance.

42.     Also on or about December 17, 2012, more than a month late, Duran sent Villasana a copy of the Arbitration Award.  However, he led Villasana to believe that the Award was not final and that the Arbitration matter was still yet unresolved.

43.     Not until about March of 2013, after much investigation on Villasana's part, did he discover the details of the fraudulent divorce and sale of his assets by Joyce, but even then, he was still not aware of Duran's connection to these acts or the POA.

8

44.     Until about mid-April 2013, when Villasana terminated his attorney/client relationship with Duran and Stuart & Clover, Duran was still telling Villasana that the Arbitration had not concluded, that there was no information from the AAA and that he was taking actions against Joyce.

45.     Additionally, immediately following the issuance of the arbitration award, Landmark's counsel sent Duran notice of additional warranty related claims against H & R regarding a water tower in Corpus Christi, Texas that were never reported to Plaintiffs.

46.     By about January 9, 2013, having exhausted several attempts to resolve the Corpus Christi issues with Duran, who had never shared any information regarding this matter with Plaintiffs; Landmark filed a lawsuit against H & R for breach of contract in Tarrant County, Texas (141st Judicial District, Cause No. 141-263236-12) claiming damages for repairs to the water tower that Landmark had to complete at its own expense.

47.     In addition to Duran being the attorney for H & R, he was also H & R's registered service agent in Oklahoma.  As such, a copy of the Landmark breach of contract petition was served on him on January 9, 2013; still Duran failed to notify Plaintiffs.

48.     On February 19, 2013, the Tarrant County District Court entered a Default Judgment in favor of Landmark since no response or action had been taken by H & R.  The judgment amount was greater than the sum of the arbitration award Landmark owed, thus Landmark took the amount of the default judgment as an offset to the arbitration award and H & R never received any of the money awarded to it, nor did Villasana recover any of said money that was owed to him as the sole member/owner of H & R.

49.    Additionally, because Duran never responded to Landmark's counsel and never reported the warranty claim to Plaintiffs, H & R was precluded from having any opportunity to correct the alleged Corpus Christi defects.  This caused additional damages to Plaintiffs since the cost to correct the alleged defects with H & R's own crew and materials would have been far less than the amount of Landmark's offset.

50.    Duran received a copy of the Default Judgment, but again, failed to notify Plaintiffs.  Plaintiffs only became aware of the lawsuit and default judgment in May 2013, after terminating their attorney/client relationship with Duran and Stuart & Clover.

51.    Since May of 2013, Plaintiff has discovered that Joyce used the forged POA prepared by Duran, to aid her in obtaining and liquidating all of Villasana and H & R's company and personal cash, property, and other assets valued at approximately Eight Hundred, Sixty Thousand Dollars ($860,000.00) total.  This amount includes equipment, tools, trucks, trailers and other items belonging to H & R, which alone, were valued at approximately Five Hundred Thousand Dollars ($500,000.00) and vehicles and real property belonging to Villasana, including his Sapulpa, Oklahoma residence/home office.

52.    Joyce and Duran had specific knowledge of the amount of money owed to H & R by Landmark, the potential for recovery of those funds, and the significant estimated value of all of Plaintiffs' combined personal and business assets and property.  Joyce and Duran were also aware that with Villasana out of the country, without a chance to return in the near future, there would be nothing he could do to stop them from selling off all of his personal and company assets and property and absconding with the proceeds.

53.     Joyce and Duran's thievery was made easier because Villasana trusted, depended, and relied on them to handle his personal and business needs, when in reality they were covering up their actions from him through fraud and concealment.

54.     At all times relevant to these claims, Duran served as the registered service agent for H & R for all OSOS purposes. However, Duran failed to notify, inform, communicate, assist or take any action whatsoever to assure that H & R kept in good standing with the OSOS in regard to the filing of its annual certificates on at least three (3) occasions; in 2011, 2012 and 2013.  Each of these resulted in actual damages to H & R in the form of additional filing fees and attorney time.

55.     Specifically and important to the claims herein, as the Registered Agent for H & R, Duran would have received communications from the OSOS in regard to the timely filing of H & R's 2013 annual certificate (in or before July 2013), again regarding a notice of deficiency for failure to file same (in or about September 2013), then again (in November 2013) regarding a notice that H & R was terminated for failure to file its 2013 annual certificate (which was due by September 7, 2013).  At no time did Duran advise Villasana, the sole member/owner of H & R, of any communication he received from the OSOS and at no time did Duran ever attempt to assist Villasana with the preparation or filing of the 2013 annual certificate which would have kept H & R in good standing with the OSOS.

56.     Plaintiffs believe it may have been an intentional effort on Duran's part to allow H & R to be terminated by the OSOS so it would not have standing in which to sue him for the claims brought herein and/or because Duran knew that there was nothing left of H & R to maintain viable after Joyce raided, liquidated and decimated it.

57.     Pursuant to Tit. 54 Okla. Stat. § 1-301(1),

Each partner is an agent of the partnership for the purpose of its business. ***An act of a partner***, ***including the execution of an instrument in the partnership name, for apparently carrying on in the ordinary course the partnership business or business of the kind carried on by the partnership binds the partnership***.

Emphasis added.

58.     Further, in accordance with Tit. 54 Okla. Stat. § 1-305(a), "[a] partnership is liable for loss or injury caused to a person, or for a penalty incurred, as a result of a wrongful act or omission, or other actionable conduct, of a partner acting in the ordinary course of business of the partnership or with authority of the partnership."

59.     Duran's representation of H & R and Villasana in the arbitration, Landmark lawsuit, and other maters complained of herein as well as drafting pleadings, petitions, and POAs, were all acts (and omissions) within the ordinary course of Stuart & Clover's business.  Thus Defendant Duran's liability for Plaintiffs' damages is properly imputed to his law firm, Stuart & Clover, where he was a named partner.

60.     As a result of the acts and omissions of the Defendants, Plaintiff H & R has suffered significant economic damages in the form of lost arbitration proceeds, loss of business income, the entry of a default judgment against it, and the loss of tools, equipment and vehicles necessary for it to carry on business operations.

61.     As a result of the acts and omissions of the Defendants, Plaintiff Villasana has suffered significant economic damages in the form of lost real and personal property and income and profits from H & R, where he is and was at all times relevant hereto the sole member and owner.

12

62. This case was originally filed in the United States Federal Court for the Western District of Oklahoma on December 5, 2013, by Plaintiff Villasana, and voluntarily dismissed on February 26, 2014, in order to bring H & R back into good standing with the OSOS (since it was terminated on November 7, 2013), to add H & R as a separate individual proper party plaintiff, and to revise and add to these claims.

## IV. CLAIMS FOR RELIEF

### CLAIM NUMBER 1
### Professional Negligence/Legal Malpractice

63. Plaintiffs repeat and re-allege each allegation contained in paragraphs 1 through 62 of this Petition as though fully set forth at length herein against both Defendants and further allege that:

64. As an attorney, Duran must possess that degree of knowledge and ability ordinarily possessed by other attorneys, and must exercise ordinary care, diligence and judgment in the performance of any service undertaken as an attorney for his client(s), who in this case are the Plaintiffs; both H & R as the corporate client and Villasana as an individual client and the sole member/owner and representative of that corporate client.

65. Duran failed to exercise the care which a reasonably careful lawyer in such an attorney/client relationship would use under the same or similar circumstances to avoid injury to the Plaintiffs' person or property, and/or did something which a reasonably careful lawyer in a similar position would not do, thereby making him negligent.

66. Plaintiffs, both H & R as the corporate client and Villasana as an individual client and the sole member/owner and representative of that corporate client, and Duran

were engaged in an attorney/client relationship. Duran breached his legal and fiduciary duties owed to Plaintiffs as required by that relationship, which constitutes negligence, and was the causal nexus of the resulting damages to Plaintiffs; but for Duran's conduct, Plaintiffs would not have been damaged.

67.     Since Duran's professional negligence/legal malpractice occurred during his overall legal representation of Plaintiffs, which was the kind of business normally handled by Stuart & Clover, and such services were undertaken within the normal course and scope of his employment and partnership with the law firm, Defendant Duran's actions and omissions bind the law firm and his liability is imputed to it.

68.     As a result of Defendants' professional negligence/legal malpractice, Plaintiffs, both H & R as the corporate client and Villasana as an individual client and the sole member/owner and representative of that corporate client, sustained damages in an amount in excess of approximately One Hundred, Sixty Thousand, Dollars ($160,000.00), which is the amount of recovered arbitration funds still unaccounted for, Sixty-Six Thousand, Seven Hundred, Fifty-three Dollars and seventeen cents ($66,753.17), which is the amount Plaintiffs lost as a result of the Landmark Default Judgment, the value of H & R and Villasana's cash, real and personal property and other business and personal assets sold, transferred, or otherwise liquidated by Joyce with the aid of the forged POA; the total of which amounts to approximately Eight Hundred, Sixty Thousand Dollars ($860,000.00).

69.     Defendants' professional negligence/legal malpractice was willful, wanton and in reckless disregard of Plaintiffs' rights, and warrants the imposition of additional damages to punish Defendants and/or act as an example to others. Consistent therewith,

Plaintiffs are entitled to an award of punitive damages in an amount to be determined at trial, but not less than an amount equal to the sum total of actual damages awarded to them.

**CLAIM NUMBER 2**
**Breach of Fiduciary Duty**

70.      Plaintiffs repeat and re-allege each allegation contained in paragraphs 1 through 69 of this Petition as though fully set forth at length herein against both Defendants and further allege that:

71.      A fiduciary relationship existed between Plaintiffs, both H & R as the corporate client and Villasana as an individual client and the sole member/owner and representative of that corporate client, and Defendants Duran and Stuart & Clover in whom Plaintiffs reasonably placed their trust and confidence with the expectation of their integrity and loyalty, and Defendants Duran and Stuart & Clover knowingly accepted that trust and confidence, and undertook actions on behalf of Plaintiffs. This fiduciary relationship exists and is represented by the attorney/client agreement and relationship.

72.      Defendants' fiduciary duties owed to H & R and Villasana were those of an agent to a principal and included, but not necessarily limited to: the duty of loyalty, duty of performance, duty to maintain confidences, duty to refrain from self-dealing, and the duty to provide timely and accurate information to them.

73.      Defendants' breached each of their fiduciary duties to Plaintiffs by not failing to remain loyal to them, failing to perform actions as promised and billed, failing to maintain Plaintiffs' confidences, failing to refrain from self-dealing, and failing to provide Plaintiffs with timely and accurate information regarding their legal matters.

74.     Defendants Duran and Stuart & Clover's breach of their fiduciary duty owed to Plaintiffs makes them liable for any and all harm and damages that are directly caused by said breach. Plaintiffs, both H & R and Villasana, have been damaged as a direct result of Defendants' breach of their fiduciary duties as plead herein.

75.     Given that Duran's breach of fiduciary duty occurred during his overall legal representation of Plaintiffs, which was the kind of business normally handled by Stuart & Clover, and such services were undertaken within the normal course and scope of his employment and partnership with the law firm, Defendant Duran's actions and omissions bind the law firm and his liability is imputed to it.

76.     As a result of Defendants' breach of their fiduciary duties, Plaintiffs, H & R as the corporate client and Villasana as an individual client and the sole member/owner and representative of that corporate client, sustained damages in an amount in excess of approximately One Hundred, Sixty Thousand, Dollars ($160,000.00), which is the amount of recovered arbitration funds still unaccounted for, Sixty-Six Thousand, Seven Hundred, Fifty-three Dollars and seventeen cents ($66,753.17), which is the amount Plaintiffs lost as a result of the Landmark Default Judgment, the value of H & R and Villasana's cash, real and personal property and other business and personal assets sold, transferred, or otherwise liquidated by Joyce with the aid of the forged POA; the total of which amounts to approximately Eight Hundred, Sixty Thousand Dollars ($860,000.00).

77.     Defendants' breach of their fiduciary duties was willful, wanton and in reckless disregard of Plaintiffs' rights, and warrants the imposition of additional damages to punish Duran and Stuart & Clover and/or act as an example to others. As such, Plaintiffs

are entitled to an award of punitive damages in an amount to be determined at trial, but not less than an amount equal to the sum total of actual damages awarded to them.

## CLAIM NUMBER 3
### Breach of Contract

78.     Plaintiffs repeat and re-allege each allegation contained in paragraphs 1 through 77 of this Petition as though fully set forth at length herein against both Defendants and further allege that:

79.     Plaintiffs were a party to an attorney/client agreement, which was a contract formed between Plaintiffs, both H & R as the corporate client and Villasana as an individual client and the sole member/owner and representative of that corporate client, and Defendants Duran and Stuart & Clover, wherein Defendants offered and agreed to perform competent legal services on Plaintiffs' behalf and in their best interest while maintaining all legal and fiduciary duties owed them; to which Plaintiffs accepted and in exchange, made payment of Defendants' legal fees and costs as consideration thereof.

80.     The attorney/client agreement between Plaintiffs, H & R and Villasana, and Defendants Duran and Stuart & Clover, may have been written or oral and could have been expressed or implied, but was nonetheless breached or broken when Defendants Duran and Stuart & Clover did not do what they promised.

81.     Defendants breached their contract with Plaintiffs by failing to perform competent legal services on their behalf and in their best interest and by failing to maintain their legal and fiduciary duties as promised in the attorney/client agreement.

17

82.     Even if the breach of contract was only as a result of acts or omissions by Duran, since Oklahoma law (Tit. 54 Okla. Stat. § 1-301(1)) states that "the execution of an instrument in the partnership name" is binding on the law firm, Duran's liability for breach of the attorney/client agreement is still imputed to Stuart & Clover.

83.     As a direct result of Defendants' breach of contract, Plaintiffs, H & R as the corporate client and Villasana as an individual client and sole member/owner of that corporate client, sustained damages in an amount in excess of approximately One Hundred, Sixty Thousand, Dollars ($160,000.00), the amount of recovered arbitration funds still unaccounted for, Sixty-Six Thousand, Seven Hundred, Fifty-three Dollars and seventeen cents ($66,753.17), the amount Plaintiffs lost as a result of the Landmark Default Judgment, the value of H & R and Villasana's cash, real and personal property and other business and personal assets sold, transferred, or otherwise liquidated by Joyce with the aid of the forged POA; the total of which is approximately Eight Hundred, Sixty Thousand Dollars ($860,000.00), which Defendants are jointly liable in order to put Plaintiffs back in as good a position as they would have been if the contract had not been breached.

### CLAIM NUMBER 4
### Fraud

84.     Plaintiffs repeat and re-allege each allegation contained in paragraphs 1 through 83 of this Petition as though fully set forth at length herein against both Defendants and further allege that:

85.      Defendant Duran made verbal and written representations regarding the type, extent and amount of the legal services he was performing on Plaintiffs' behalf;

18

knowing those representations to be untrue, with the intent to deceive and defraud Plaintiffs and induce them to continue employing Defendants to work on their behalf, at least in part, to aid in the cover up of his other bad acts.

86. Defendants, both Duran and Stuart & Clover, failed to actually perform the legal services as Duran purported to Villasana, both took money from Villasana and H & R for legal work never performed, both failed to notify, communicate or advise Plaintiffs in any manner that would have provided any opportunity for legal protection, counsel or assistance and both improperly concealed the truth and facts of other matters from Plaintiffs for the purpose of defrauding Plaintiffs, which resulted in actual financial damages to them.

87. Defendant Duran further defrauded Plaintiffs by directly assisting Joyce to steal away Plaintiffs' cash, property and other assets when he knowingly prepared the forged POA she used for such purposes.

88. Defendant Duran also aided in defrauding Plaintiffs by assisting Joyce to retain an attorney for the purposes of obtaining the fraudulent divorce decree from Villasana, which was then used along with the fraudulent POA to embezzle, transfer, sell and otherwise liquidate and abscond with all of Plaintiffs' cash, property and other assets.

89. Additionally, Defendant Duran's silence and failure to report to Villasana regarding the arbitration award; his wife's divorce; the Landmark warranty claims, lawsuit and default judgment; were representations by silence known to be false and fraudulent with the intent to deceive Plaintiffs so that they would be unaware of such matters, in order for Joyce to have time to complete her nefarious activities to defraud Plaintiffs and strip them of their personal and company cash, property and other assets.

90.     Plaintiffs reasonably relied on Defendant Duran's fraudulent statements and representations by silence and continued employing Duran and Stuart & Clover to work on their behalf, fully expecting Duran to competently and loyally pursue and resolve matters that, if competently handled, could have resulted in a benefit to Plaintiffs and prevented the fraud perpetrated upon them, thus preventing their financial damages plead herein.

91.     Since Defendant Duran's fraudulent acts and omissions occurred during his overall legal representation of Plaintiffs, which was the kind of business normally handled by Stuart & Clover, and such services were undertaken within the normal course and scope of his employment and partnership with the law firm, Defendant Duran's actions and omissions bind the law firm and his liability is imputed to it.

92.     As a result of Defendants' fraudulent representations, actions, and representations by silence, Plaintiffs, both H & R as the corporate client and Villasana as an individual client and the sole member/owner and representative of that corporate client, sustained damages in an amount in excess of approximately One Hundred, Sixty Thousand, Dollars ($160,000.00), which is the amount of recovered arbitration funds still unaccounted for, Sixty-Six Thousand, Seven Hundred, Fifty-three Dollars and seventeen cents ($66,753.17), which is the amount Plaintiffs lost as a result of the Landmark Default Judgment, the value of H & R and Villasana's cash, real and personal property and other business and personal assets sold, transferred, or otherwise liquidated by Joyce with the aid of the forged POA; the total of which amounts to approximately Eight Hundred, Sixty Thousand Dollars ($860,000.00).

93.     Defendants' fraudulent conduct was willful, wanton and in reckless disregard of Plaintiff's rights, and warrants the imposition of additional damages to punish Duran and Stuart & Clover and/or act as an example to others. Consistent therewith, Plaintiffs are entitled to an award of punitive damages in an amount to be determined at trial, but not less than an amount equal to the sum total of all actual damages awarded to them.

### CLAIM NUMBER 5
### Breach of Registered Service Agent Duties

94.     Plaintiffs repeat and re-allege each allegation contained in paragraphs 1 through 93 of this Petition as though fully set forth at length herein against both Defendants and further allege that:

95.     At all times relevant hereto (from about May 28, 2010 to April 15, 2014), Duran served as the registered service agent for H & R for all OSOS purposes. However, Duran failed to notify, inform, communicate, assist or take any action whatsoever in aid of keeping H & R in good standing with the OSOS for the years 2011, 2012 and 2013.

96.     As the registered service agent for H & R, Duran had certain duties which included (but were not exclusive of) duties of trust, loyalty, and to refrain from self-dealing. Duran violated those duties by unilaterally making Joyce a manager of H & R in May 2010 and again by making himself a manager of H & R in July 2012.

97.     Additionally, Duran failed to provide any service to H & R or satisfy any of his registered service agent duties when, between November 2012 and February 2013, he failed to report the Landmark warranty claims, lawsuit and default judgment to Villasana.

21

98.    Specifically relevant to H & R's continued good standing status, as the Registered Service Agent for H & R, Duran would have received communications from the OSOS regarding the timely filing of H & R's 2013 annual report (in about July 2013), then a notice of deficiency for failure to file (in about September 2013), then again in November 2013 he would have received a notice that H & R was terminated for failure to file its 2013 annual report (which was due by September 7, 2013).

99.    However, at no time did Duran advise Villasana, the sole member/owner of H & R, of any communication he received from the OSOS and at no time did Duran ever attempt to assist Villasana with the preparation or filing of the 2013 annual report which would have kept H & R in good standing with the OSOS.

100.   Duran's failure to notify, inform, communicate, or take any action whatsoever in regard to assuring that H & R kept in good standing with the OSOS in 2013 was a direct violation of his duties owed to H & R as its registered service agent and a direct cause of H & R's termination of good standing by the OSOS.

101.   Plaintiffs believe this was an intentional effort on Duran's part to further protect himself from the fraud and cover-up alleged herein. By allowing H & R to be terminated by the OSOS, neither Villasana, nor H & R would have standing to sue Duran for the claims brought herein and/or because Duran knew that there was no company left to operate or keep in good standing after Joyce raided, liquidated and absconded with all of H & R's cash, property and other assets.

102.   Further, since Defendant Duran acted as H & R's registered service agent as part of his overall legal representation of Plaintiffs, which was the kind of business

normally handled by Stuart & Clover, and such services were undertaken within the normal course and scope of his employment and partnership with the law firm, Defendant Duran's actions and omissions bind the law firm and his liability is imputed to it.

103.   As a direct result of Duran's failure to fulfill his registered service agent duties, Plaintiffs incurred financial damages related to the inability to collect the Sixty-Six Thousand, Seven Hundred, Fifty-three Dollars and seventeen cent ($66,753.17) Landmark arbitration award; lost the money saving advantage of being able to perform the Landmark warranty claims themselves, suffered a default judgment from the Landmark lawsuit filed against H & R; and Villasana was required to pay additional attorney fees and costs to reinstate H & R to good standing with the OSOS.  Said financial damages would not have been incurred if Duran would have performed his duties as the registered agent for H & R.

104.   Defendants Duran's failure to fulfil his duties as service agent for H & R was willful, wanton and in reckless disregard of Plaintiffs' rights, and warrants the imposition of additional damages to punish Duran and Stuart & Clover and/or act as an example to others.  Consistent therewith, Plaintiffs are entitled to an award of punitive damages in an amount to be determined at trial, but not less than an amount equal to the sum total of all actual damages awarded to them.

## V.  PRAYER FOR RELIEF

**WHEREFORE   PREMISES   CONSIDERED**, Plaintiffs   Hector   Alejandro Villasana Castillo and H & R Enterprises, LLC hereby respectfully pray this Court enter judgment in their favor on all their claims against the Defendants Robert S. Duran, Jr.,

Stuart, Clover, Duran, Thomas & Vorndran, LLP, and Stuart & Clover, PLLC and request

that this Court award Plaintiffs the following relief:

(1)     actual damages in the total amount of Eight Hundred, Sixty Thousand
        Dollars ($860,000.00);

(2)     the full amount paid to Defendants for legal fees, costs and any money
        remaining in trust;

(3)     punitive damages in an amount not less than the total sum awarded to them
        for actual damages;

(4)     actual attorney fees and costs expended in the prosecution of this action and
        for the reinstatement of H & R to good standing with the OSOS;

(5)     appropriate prejudgment and post-judgment interest as allowed by law; and

(6)     any and all further relief in equity or at law this Court deems just and proper.

Respectfully submitted,
**SHOOK & JOHNSON, P.L.L.C.**

Sean E. Manning, OBA No. 18961
7420 South Yale Avenue
Tulsa, Oklahoma 74136-7029
*smanning@shookjohnson.com*
Telephone:    (918) 293-1122
Facsimile:    (918) 293-1133
*Attorney for the Plaintiffs*

24